**In the MATTER of Harold L. MONSON.**

**No. C2-91-1372.**

Court of Appeals of Minnesota.

Dec. 17, 1991.

Ronald L. Thorsett, Eden Prairie, for appellant Monson.

Michael O. Freeman, Hennepin Co. Atty., Elizabeth V. Cutter, Asst. Co. Atty., Minneapolis, for respondent.

Considered and decided by KALITOWSKI, P.J., and FORSBERG and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

Appellant was committed as a psychopathic personality to the Minnesota Security Hospital for an indeterminate period. Harold Monson appeals, contending the evidence was insufficient to support the determination that he is a psychopathic personality. We affirm.

## FACTS

On November 19, 1990, appellant pleaded guilty in Hennepin County District Court to two counts of second degree criminal sexual conduct for incidents involving young boys. Respondent, a Hennepin County probation officer, filed a petition for appellant's commitment as a psychopathic personality on December 10, 1990. After the initial hearing, the trial court committed appellant as a psychopathic personality to the Minnesota Security Hospital.

The security hospital examined appellant and submitted a report. It did not recommend appellant be committed as a psychopathic personality, but instead recommended that he be returned to the district court for sentencing. A hearing was held on whether appellant should be committed for an indeterminate period. The trial court committed appellant as a psychopathic personality for an indeterminate period to the Minnesota Commissioner of Corrections.

Respondent Hennepin County moved for amended findings to provide that appellant would be committed to the Minnesota Security Hospital. Appellant moved that the findings be amended to state he did not meet the criteria for commitment as a psychopathic personality, or, in the alternative, to commit him to a less restrictive alternative than the Commissioner of Corrections or the Minnesota Security Hospital. The trial court committed appellant as a psychopathic personality for an indeterminate period to the Minnesota Security Hospital. Harold Monson appeals.

Evidence was presented at both hearings and in reports to the court providing a factual basis for the trial court determina-

tion. Appellant had what the trial court characterized as a lengthy history of sexual abuse of young boys between age six and eight. The first reported incident of abuse occurred in 1979 when appellant sexually abused his then nine or ten-year-old nephew. The nephew, age 25 at the time of the initial hearing, testified as to details of the abuse. The nephew reported the abuse for the first time in 1985 to support another nephew, who was five or six years old, and who also reported sexual abuse by appellant.

At the initial commitment hearing, three boys also testified concerning the sexual abuse inflicted upon them by appellant, which led to his convictions. The boys were all in third grade and lived in the neighborhood in which appellant lived. One of the boys testified appellant's abuse occurred throughout the summer of 1989 until the boy told his father, who then contacted the police.

The abuse occurred in a garage attached to the house in which appellant lived. Appellant had established a rather elaborate room apparently designed to attract young boys to the area, and offered them free use of a video game and cans of pop and beer. On the walls were pictures of nude women and a photocopy of a young boy urinating in a stream. Outside the garage was a ramp for skateboarding. On the outside wall of the garage, visible through a hole cut into the wall, was a mirror, which enabled a person near the video game to observe anyone approaching the garage.

While the boys were in the garage, appellant fondled their genitals through their clothing and, on occasion, had skin-to-skin contact. When the boys urinated, appellant held their penises, and when appellant urinated, he asked the boys to hold his penis. Appellant used an electric vibrator on the boys, pressing it against their genitals. On at least one occasion, appellant held an electric drill against the head of one of the boys and warned him not to tell. The police interviewed six boys who reported abuse. Appellant admitted touching three boys, but minimized his conduct, stating he did nothing the boys did not want

him to do. He claimed the boys were put up to making the reports of sexual abuse by the father of the nephew appellant reportedly abused in 1985. Appellant admitted touching his nephew in 1975, but stated it was his nephew's idea.

Dr. Nancy Steele, a psychologist, testified it appeared appellant had a long-standing problem with sexual abuse of boys which his family knew about. She diagnosed appellant with pedophilia and alcoholism. She testified confinement and surveillance of appellant was important, because he was dangerous to numerous young boys. She also felt he would benefit from treatment. Steele commented that based upon her observations of appellant and the children who testified, she became impressed with how afraid they were of him, and how much hostility and anger appellant exhibited.

The court asked Dr. Steele to provide a specific factual basis to support her conclusion that appellant is a psychopathic personality. As to emotional instability, she testified appellant seemed very confused about where he was and what was going to be happening to him. He was upset about family matters and his current circumstances. The sexual impulsiveness comes from sexual behavior over a period of years with little boys, which he knew was clearly inappropriate and wrong. Dr. Steele explained appellant is cold and calculating about his sexual needs, but the decision as to which child he touches on a particular day probably is somewhat impulsive. Alcoholism is an impulsive disorder which he is apparently unable to control. He is irresponsible in sexual matters due to his sexual impulsiveness. His abuse of children and drinking shows a lack of good judgment. She testified that his planning and forethought in setting up the mirror in the garage so he could see if anyone was coming, and his planning on how to attract the children, showed the strength of his drive or the need to have the children. Appellant's threats to the children to avoid disclosure showed a lack of judgment. Appellant showed a failure to appreciate the consequences of his sexual actions, indicating in several statements that he did not

appreciate the seriousness of his pedophilia.

Dr. Carl Schwartz, the court-appointed examiner, submitted a report on December 13, 1990 recommending commitment of appellant as a psychopathic personality to the Minnesota Security Hospital. He found appellant emotionally unstable, based on his character disorder, lying and denying, repeated law breaking, and alcoholism. Schwartz did not believe appellant's actions were impulsive, because his behavior was patterned and repetitive and he created an ambience for his alleged crimes. He found appellant has an apparent chronic lack of responsibility, denies any irresponsible behavior, will not admit he broke the law, and denies the existence of his alleged behavior.

Dr. William D. Erickson, from the Minnesota Security Hospital, testified that appellant is a pedophile. However, the security hospital did not recommend committment as a psychopathic personality, but instead recommended he be returned to court for disposition. Appellant is not willing to receive treatment, nor is he amenable to treatment. Further, appellant did not have any prior convictions, and Dr. Erickson did not believe appellant presented a greater risk to society than many of the offenders the hospital sees.

## ISSUE

Was the trial court clearly erroneous in finding there was clear and convincing evidence to commit appellant as a psychopathic personality pursuant to Minn.Stat. § 526.10, subd. 1 (1990)?

## ANALYSIS

Minn.Stat. § 526.09 (1990) defines psychopathic personality as:

[T]he existence in any person of such conditions of emotional instability, or impulsiveness of behavior, or lack of customary standards of good judgment, or failure to appreciate the consequences of personal acts, or a combination of any such conditions, as to render such person irresponsible for personal conduct with respect to sexual matters and thereby dangerous to other persons.

The Minnesota Supreme court further defined a psychopathic personality under the statute as:

[P]ersons who by an habitual course of misconduct in sexual matters have evidenced an utter lack of power to control their sexual impulses and who as a result are likely to attack or otherwise inflict injury, loss, pain or other evil on the objects of their uncontrolled and uncontrollable desire.

*State ex rel. Pearson v. Probate Court of Ramsey County,* 205 Minn. 545, 555, 287 N.W. 297, 302 (1939), *aff'd,* 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744 (1940). The *Pearson* court admonished against an overbroad interpretation of the statute:

It would not be reasonable to apply the provisions of the statute to every person guilty of sexual misconduct nor even to persons having strong sexual propensities. Such a definition would not only make the act impracticable of enforcement and perhaps unconstitutional in its application, but would also be an unwarranted departure from the accepted meaning of the words defined.

*Id.*

The provisions of Chapter 253B as to commitment of persons mentally ill and dangerous apply to commitment as a psychopathic personality. Minn.Stat. § 526.10, subd. 1. The evidence must be clear and convincing. Minn.Stat. 253B.18, subd. 1; *see also In re Joelson,* 344 N.W.2d 613, 614 (Minn.1984).

On appeal, this court must determine whether the trial court's findings of fact are supported by the record as a whole and are not clearly erroneous. *See In re Joelson,* 385 N.W.2d 810, 811 (Minn.1986). Where conflicting evidence is presented as to the existence of a psychopathic personality, resolution is a question of fact which is to be determined by the trial court upon all the evidence. *In re Martenies,* 350 N.W.2d 470, 472 (Minn.App.1984), *pet. for rev. denied* (Minn. Sept. 12, 1984).

Appellant contends the trial court failed to state precisely the facts used to support its findings. However, a review of the trial court's order shows it made findings of specific facts which supported its determination that the statutory factors were met. For example, the trial court found appellant's behavior established he lacked the customary standards of good judgment with respect to sexual matters as demonstrated by the sexual acts he committed with the young boys, as well as his inappropriate display of naked women to the boys.

█ Appellant also challenges the trial court's determinations that the facts were sufficient to meet the statutory standard, and attempts to explain or discredit the facts upon which the trial court made its findings. The trial court found that appellant was emotionally unstable, as demonstrated by his confusion when he was interviewed. Appellant contends this is hardly surprising for a man just convicted of a serious felony who faces indefinite commitment. However, he argues his confusion was not a basis for a finding of emotional instability. We note that the trial court accepted the testimony by Dr. Steele. In any event, it is not the sole factor upon which the trial court relied.

Appellant argues the record in this case simply fails to demonstrate his lack of control as shown by a habitual course of sexual misconduct. Appellant contends that in his 65 years, he has been convicted of sexual misconduct only once. The only other incident was the incident which occurred with his nephew nearly 20 years ago. As respondent notes, the psychopathic personality statute does not address convictions; it addresses behavior, which in appellant's case clearly showed multiple acts of sexual abuse against young boys. Dr. Steele testified that appellant admitted to her that there were so many boys in and out of the garage that he could not keep track of them.

Appellant also contends that neither Dr. Steele's testimony nor the court's findings directly addressed his ability to control his behavior. Further, he cites Dr. Schwartz' finding that he was not impulsive, but instead that his tactic of luring children to his garage was passive, calculated and patient. The trial court found that although appellant established elaborate enticements for the boys, his acts of abuse were acts of impulsivity, committed without control but with some level of awareness. This was supported by Dr. Steele's testimony, which the trial court was entitled to credit.

Finally, appellant argues that while his actions in taking advantage of the vulnerability of children was indefensible, his conduct must be kept in perspective. He asserts that sex offenders who are guilty of far more violent and frequent offenses than appellant's crimes are not typically committed. He contends that "vague and speculative fears about future conduct" should not result in his commitment, simply for the purpose of maintaining him in a child-free environment. Appellant argues that speculation about his dangerousness is particularly troublesome because, in the absence of criminal convictions prior to the one for which he is now serving time, the potential rehabilitative and deterrent effects of incarceration have not been given a chance. He asserts that psychiatrists are not accurate predictors of dangerousness and argues that in a free society a certain amount of risk must always be run.

The trial court found appellant is a danger to others because he is not willing to be treated for pedophilia, and untreated pedophiles are at a very high risk of reoffending. All experts, including those from the security hospital, agreed that appellant was likely to commit more offenses against young boys if not confined. Dr. Steele explained that offenders like appellant tend to be highly recidivistic and find many victims, and specifically testified that they represent a public menace. She predicted that if appellant were released, there would be another 10 to 15 boys abused before he was caught and prosecuted again.

Under the facts of this case, appellant was properly committed as a psychopathic personality. The trial court's findings of fact are not clearly erroneous, and its determination that the statutory factors were

met is supported by clear and convincing evidence.

## DECISION

The commitment of appellant as a psychopathic personality for an indeterminate period is affirmed.

Affirmed.