In the Matter of Wilbert **BUCKHALTON.**

No. C7–93–528.

Court of Appeals of Minnesota.

July 13, 1993.

Review Granted Sept. 10, 1993.

Stephen D. Radtke Bloomington, for appellant Buckhalton.

Michael O. Freeman, Hennepin County Atty., Carolyn A. Peterson and Gayle C. Hendley–Zappia, Asst. County Attys., Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Blair A. Rosenthal, Katherine M. Brennan, Sp. Asst. Attys. Gen., St. Paul, for intervenor.

Considered and decided by SCHUMACHER, P.J., and NORTON and PETERSON, JJ.

## OPINION

NORTON, Judge.

Wilbert Buckhalton appeals from his commitment as a psychopathic personality to the Minnesota Security Hospital. This court granted the attorney general's motion to intervene and file a brief. We affirm.

## FACTS

Appellant is a repeat sex offender with a lengthy history of incarceration. Appellant was convicted of criminal sexual conduct in the first degree in 1979. In this incident, after helping a woman remove her automobile from a snow bank, appellant forced her to undress and engage in sexual intercourse at gunpoint. Appellant served time at Minnesota Correctional Facility–St. Cloud, and was paroled.

After a parole violation, appellant was placed on conditional release again in 1984. In December 1984, appellant entered the home of a former girlfriend, C.A. He hit her with a belt when she refused to get undressed, and then had forced sexual in-

tercourse with her, slapping her to stop her from crying.

Two weeks later, in January 1985, appellant went to C.A.'s mother's home, and gained entrance by impersonating an acquaintance of hers. Apparently, appellant believed that C.A.'s mother, G.T., had somehow set him up by encouraging her daughter to press charges against him for the December sexual assault. He slapped G.T. several times, knocked her head against the wall, held a knife to her throat, and had intercourse with her. He threatened to kill her if he went to jail for rape.

Appellant pleaded guilty to criminal sexual conduct in the third degree for the December sexual assault of C.A., and a charge of first degree criminal sexual conduct for the assault on G.T. was dismissed. Appellant then returned to the Minnesota Correctional Facility at Stillwater. He later laughed about the offense, and said he was unable to resist the urge to rape G.T. At the hearing, G.T., the victim of the January 1985 sexual assault, testified she is still afraid of appellant and the "look in his eyes."

At the commitment hearing, a former Lino Lakes inmate testified he saw appellant engage in what appeared to be both sexual intercourse and oral sex with a female visitor in the Lino Lakes visiting room in February 1992. Appellant slapped the woman twice before the perceived oral sex. Appellant testified that this incident did not occur, but the trial court credited the witness.

Appellant's incarceration and parole history showed a long line of disciplinary infractions and elopements from community placements. One of the more serious instances occurred in 1987, when appellant received an institutional conviction for attempted homicide and possession of a weapon. Appellant has failed to complete sex offender treatment, even though it has been offered and tried many times. He completed a treatment program for substance abuse, but has used illegal drugs since.

Appellant's release date was December 20, 1992. On November 9, 1992, the Hen-nepin County Attorney's office filed a petition for appellant's commitment as a psychopathic personality on behalf of Warden Robert Erickson of the Minnesota Correctional Facility–Stillwater. On the same day, respondent moved the court for an order directing Stillwater to turn over a certified copy of appellant's corrections record for use by the court-appointed examiner. On November 10, the court issued an order accordingly.

Dr. Owen Nelson, the court-appointed examiner, filed a report on December 14, 1992, which did not support commitment. Respondent then arranged for its own examiner, Dr. Douglas Fox, to review the matter. Respondent mailed material, including the corrections records, to Dr. Fox.

At the hearing, Dr. Nelson testified as to his opinion that appellant did not meet the criteria for commitment as a psychopathic personality. Appellant's parole officer from November 1986 through December 1990 testified that during this period, there was no indication of inappropriate sexual acting out. He did not believe appellant is presently a risk to the public.

Dr. Lyle Davies, a psychologist at Minnesota Correctional Facility–Faribault, testified appellant's criminal sexual conduct convictions and his prison behavior warranted commitment as a psychopathic personality. Dr. Fox also testified that appellant met the criteria for commitment as a psychopathic personality.

Appellant testified that he regrets what he did and feels sorry for his victims. He testified that he has learned to think before he acts and knows how to deal with his anger. He claims he is more diplomatic and objective. He also testified that he plans to abstain from drugs.

The trial court did not credit appellant's testimony. It cited Dr. Fox's testimony that appellant has no empathy for his victims and that he claimed that the mother/victim got the "justice" she "deserved," that appellant laughed about the incident, and that he could not resist the compulsion he had to rape the mother. As to his anger, the trial court noted appellant's vio-

lent anger precipitated the 1979, 1984, and 1985 sexual assaults, and it was the root cause of his numerous prison and halfway house problems. As to his drug use in 1992, he had a positive test for THC and admitted smoking marijuana. He has also admitted using other drugs while on parole and in prison.

The trial court found that appellant's impulsive behavior, lack of customary standards of good judgment, and failure to appreciate the consequences of personal acts render him irresponsible for personal conduct with respect to sexual matters and thereby dangerous to other persons. It found his behavior is that of a person who by a habitual course of misconduct in sexual matters has evidenced an utter lack of power to control his sexual impulses, and who as a result is likely to attack or otherwise inflict injury, loss, pain or other evil on the objects of his uncontrolled and uncontrollable desires. Finally, it found he was extremely dangerous to other persons in that he has committed vicious assaults of a sexual nature in the past, and is likely to do so in the future without proper treatment. The trial court concluded there was clear and convincing evidence to establish that appellant met the definition of a psychopathic personality as set out in Minn. Stat. § 526.09, and the criteria by the supreme court, and it committed appellant to the Minnesota Security Hospital as a psychopathic personality. Wilbert Buckhalton appeals.

## ISSUES

1. Should the petition for commitment as a psychopathic personality be dismissed under Minn.Stat. § 253B.08, subd. 1 (1992) because the hearing was untimely?

2. Was respondent authorized to provide its expert with appellant's corrections records, which are private data?

3. Was the trial court's decision to commit appellant as a psychopathic personality clearly erroneous and not supported by the record?

4. Is the psychopathic personality statute unconstitutional?

## ANALYSIS

### I.

■ Appellant first contends that the petition should have been dismissed because the hearing was untimely. Psychopathic personality commitments are governed by the procedures set forth for those committed as mentally ill and dangerous under Minn.Stat. ch. 253B. Minn.Stat. § 526.10, subd. 1 (1992). The hearing on the petition shall be held within 14 days from the date of the filing of the petition. Minn.Stat. § 253B.08, subd. 1. For good cause shown, the court may extend the time up to an additional 30 days. *Id.* When not held within the allotted time, the proceedings shall be dismissed. *Id.* The 44–day requirement may be waived. *In re May*, 477 N.W.2d 913, 915 (Minn.App.1991) (patient waived requirement by failing to attend two hearings scheduled within 44–day period).

The petition for commitment was filed on November 9, 1992, the 44th day was December 23, and the hearing was held January 4, 1993. The examiner's report was not filed until December 14. While we will not repeat the reasons for the delays, appellant did not assert the 44–day requirement until respondent sought a continuance after a December 17 probable cause order set the trial date for December 21. Ultimately, on December 23, the trial court stayed the hearing until January 4 to receive briefing on a motion to reconsider its decision that appellant's corrections records were improperly provided to the respondent's expert. Under these circumstances, we deem the 44–day requirement waived, and hold the January 4 hearing was not untimely. *See id.*

### II.

■ The next issue is whether respondent improperly provided its expert witness, Dr. Fox, with appellant's corrections records. Appellant claims that respondent obtained the corrections records for use by the court-appointed examiner pursuant to *In re D.M.C.*, 331 N.W.2d 236, 238 (Minn. 1983), and improperly forwarded them to

its independent examiner. However, the crucial question is whether respondent had a proper legal basis to obtain these records.

The corrections records at issue are private data. *See* Minn.Stat. § 13.42, subd. 3 (1992) (medical data); Minn.Stat. § 13.85, subd. 2 (corrections and detention data). Private data may be disseminated if specifically authorized by state law. Minn.Stat. § 13.05, subd. 4(b).

The corrections records at issue here could be obtained directly from the Commissioner of Corrections by a county attorney who is proceeding on a petition for commitment as a psychopathic personality. Minn.Stat. § 244.05, subd. 7 (1992). There is nothing in this section limiting access to the records to use at preliminary proceedings, as appellant contends.

■ Further, contracting parties have access to private data maintained by the governmental unit, if that data is necessary for the contracting party to carry out its contract. Minn.Stat. § 13.05, subd. 6. Counsel for respondent entered into a contract with Dr. Fox to evaluate appellant's condition to determine whether he met the criteria of a psychopathic personality, and to testify. Contrary to appellant's argument, there is no requirement this contract be written. The correctional records were therefore properly made available to Dr. Fox for the purpose of evaluating appellant. It is undisputed that Dr. Fox must treat this data with the same degree of confidentiality as required by the governmental unit with whom he has contracted. *Id.*

### III.

■ Minn.Stat. § 526.09 (1992) defines psychopathic personality as:

> The existence in any person of such conditions of emotional instability, or impulsiveness of behavior, or lack of customary standards of good judgment, or failure to appreciate the consequences of personal acts, or a combination of any such conditions, as to render such person irresponsible for personal conduct with regard to sexual matters and thereby dangerous to other persons.

The provisions of chapter 253B as to commitment of persons mentally ill and dangerous apply to commitment as a psychopathic personality. Minn.Stat. § 526.10, subd. 1. The commitment statute requires proof by clear and convincing evidence. Minn.Stat. §§ 526.10, 253B.18, subd. 1; *see In re Monson,* 478 N.W.2d 785, 788 (Minn.App.1991).

In *State ex rel. Pearson v. Probate Court of Ramsey County,* 205 Minn. 545, 287 N.W. 297 (1939), *aff'd,* 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744 (1940), the Minnesota Supreme Court narrowed the definition of a psychopathic personality as:

> Persons who by a habitual course of misconduct in sexual matters have evidenced an utter lack of power to control their sexual impulses and who as a result are likely to attack or otherwise inflict injury, loss, pain or other evil on the objects of their uncontrolled and uncontrollable desire.

205 Minn. at 555, 287 N.W. at 302. The *Pearson* court admonished against an overbroad interpretation of the statute:

> It would not be reasonable to apply the provisions of the statute to every person guilty of sexual misconduct nor even to persons having strong sexual propensities. Such a definition would not only make the act impracticable of enforcement and perhaps unconstitutional in its application, but would also be an unwarranted departure from the accepted meanings of the words defined.

*Id.*

Appellant challenges the trial court decision not to credit the testimony of Dr. Nelson, who did not support commitment. He also contends that there was insufficient evidence to show that the necessary factors for commitment were met.

The trial court's extensive findings encompass some 12 pages, and indicate that the trial court carefully considered and weighed the evidence. The trial court's decision to credit the testimony of Dr. Fox over Dr. Nelson was a question which the trial court resolved. *See In re Martenies,* 350 N.W.2d 470, 472 (Minn.App.1984), *pet. for rev. denied* (Minn. Sept. 12, 1984). Our

review of the record shows that the findings and the credibility determination are supported by the evidence, and are not clearly erroneous. *See Monson*, 478 N.W.2d at 788.

Appellant contends there was no evidence he had an utter lack of power to control his sexual impulses as required by *Pearson*, and argues the commitment was unconstitutional for this reason. The experts agreed appellant was impulsive and lacked good judgment. Appellant had stated he could not resist the compulsion to rape the mother of his 1984 victim. The court found appellant's 1979 and 1984 convictions were the direct result of appellant's impulsiveness, anger, chemical dependency and issues regarding relationships with women. The trial court's determination, which was based on its application of *Pearson* to its assessment of the evidence and testimony by witnesses, is not clearly erroneous.

## IV.

Finally, appellant contends that the application of the psychopathic personality statute denied him due process and equal protection because of the lapse of time which occurred between the commission of the act which he contends constituted the basis for the commitment, and the commitment. If the conditions for commitment are presently met, there is no reason that reliance upon past acts of the appellant is violative of due process, or otherwise improper. *See Monson*, 478 N.W.2d at 789. Further, so long as both criminal and civil proceedings are conducted in accordance with law, both may be pursued. *See Lausche v. Commissioner of Pub. Welfare*, 302 Minn. 65, 71, 225 N.W.2d 366, 369 (1974), *cert. denied*, 420 U.S. 993, 95 S.Ct. 1430, 43 L.Ed.2d 674 (1975). Finally, this court has recently held that the psychopathic personality statute does not violate equal protection. *In re Blodgett*, 490 N.W.2d 638, 645–46 (Minn.App.1992), *pet. for rev. granted* (Minn. Nov. 3, 1992). We find *Blodgett* determinative at this time.

## DECISION

The trial court's commitment of appellant as a psychopathic personality is affirmed.

**Affirmed.**