## MINNESOTA ex rel. PEARSON v. PROBATE COURT OF RAMSEY COUNTY et al.

No. 394. Argued February 6, 7, 1940.—Decided February 26, 1940.

---

[12] Conference Report, Cong. Rec., 74th Cong., 1st sess., pt. 9, ·p. 10,299.

Mr. *Joseph F. Cowern* for appellant.

*Messrs. Chester S. Wilson* and *Kent C. van den Berg,* with whom *Messrs. J. A. A. Burnquist* and *John A. Weeks* were on the brief, for appellee.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

Appellant, Charles Edwin Pearson, petitioned the Supreme Court of Minnesota for a writ of prohibition commanding the Probate Court of Ramsey County, and its Judge, to desist from proceeding against him as a "psychopathic personality" under Chapter 369 of the Laws of Minnesota of 1939. A proceeding under the statute had been brought in the Probate Court for the

272

commitment of appellant and an order for his production and examination had been issued.

Appellant contended that the statute violated the due process and equal protection clauses of the Fourteenth Amendment of the Federal Constitution. After hearing upon an alternative writ, the Supreme Court overruled these contentions and quashed the writ. 205 Minn. 545; 287 N. W. 297. The case comes here on appeal. Jud. Code, § 237 (a); 28 U. S. C. 344 (a).

The statute, in § 1, defines the term "psychopathic personality" as meaning

"the existence in any person of such conditions of emotional instability, or impulsiveness of behavior, or lack of customary standards of good judgment, or failure to appreciate the consequences of his acts, or a combination of any such conditions, as to render such person irresponsible for his conduct with respect to sexual matters and thereby dangerous to other persons."

Section 2 provides that, except as otherwise therein or thereafter provided, the laws relating to insane persons, or those alleged to be insane, shall apply with like force to persons having, or alleged to have, a psychopathic personality. There is a proviso that before proceedings are instituted the facts shall first be submitted to the county attorney who if he is satisfied that good cause exists shall prepare a petition to be executed by a person having knowledge of the facts and shall file it with the judge of the probate court of the county in which the "patient" has his "settlement or is present." The probate judge shall set the matter down for hearing and for examination of the "patient." The judge may exclude the general public from attendance. The "patient" may be represented by counsel and the court may appoint counsel for him if he is financially unable to obtain such assistance. The "patient" is entitled to compulsory process for the attendance of witnesses in his behalf.

The court must appoint two duly licensed doctors of medicine to assist in the examination. The proceedings are to be reduced to writing and made parts of the court's records. From a finding of the existence of psychopathic personality, the "patient" may appeal to the district court.

After setting forth the general principles which governed its determination, the state court construed the statute in these words:

"Applying these principles to the case before us, it can reasonably be said that the language of § 1 of the act is intended to include those persons who, by an habitual course of misconduct in sexual matters, have evidenced an utter lack of power to control their sexual impulses and who, as a result, are likely to attack or otherwise inflict injury, loss, pain or other evil on the objects of their uncontrolled and uncontrollable desire. It would not be reasonable to apply the provisions of the statute to every person guilty of sexual misconduct nor even to persons having strong sexual propensities. Such a definition would not only make the act impracticable of enforcement and, perhaps, unconstitutional in its application, but would also be an unwarranted departure from the accepted meaning of the words defined."

This construction is binding upon us. Any contention that the construction is contrary to the terms of the Act is unavailing here. For the purpose of deciding the constitutional questions appellant raises we must take the statute as though it read precisely as the highest court of the State has interpreted it. *Knights of Pythias* v. *Meyer*, 265 U. S. 30, 32; *Guaranty Trust Co.* v. *Blodgett*, 287 U. S. 509, 513; *Hicklin* v. *Coney*, 290 U. S. 169, 172; *Georgia Railway & Electric Co.* v. *Decatur*, 295 U. S. 165, 170. Moreover, as it was the manifest purpose of the court to determine definitely the meaning of the Act, we accept the view presented by the Attorney General of

the State at this bar, that the court used the word "include" as defining the entire class of persons to whom the statute applies and not as describing merely a portion of a larger class. In advance of a decision by the state court apply-- ing the statute to persons outside that definition, we should not adopt a construction of the provision which might render it of doubtful validity. *Stephenson* v. *Binford*, 287 U. S. 251, 277.

This construction of the statute destroys the conten- tion that it is too vague and indefinite to constitute valid legislation. There must be proof of a "habitual course of misconduct in sexual matters" on the part of the per- sons against whom a proceeding under the statute is directed, which has shown "an utter lack of power to control their sexual impulses," and hence that they "are likely to attack or otherwise inflict injury, loss, pain or other evil on the objects of their uncontrolled and un- controllable desire." These underlying conditions, call- ing for evidence of past conduct pointing to probable consequences are as susceptible of proof as many of the criteria constantly applied in prosecutions for crime. *Nash* v. *United States*, 229 U. S. 373, 377; *Fox* v. *Wash- ington*, 236 U. S. 273, 277, 278; *Omaechevarria* v. *Idaho*, 246 U. S. 343, 348; *United States* v. *Wurzbach*, 280 U. S. 396, 399. Appellant's criticisms are drawn from his in- terpretation of the statute and find no warrant in the statute as the state court has construed it.

Equally unavailing is the contention that the statute denies appellant the equal protection of the laws. The argument proceeds on the view that the statute has selected a group which is a part of a larger class. The question, however, is whether the legislature could con- stitutionally make a class of the group it did select. That is, whether there is any rational basis for such a selec- tion. We see no reason for doubt upon this point. Whether the legislature could have gone farther is not

the question. The class it did select is identified by the state court in terms which clearly show that the persons within that class constitute a dangerous element in the community which the legislature in its discretion could put under appropriate control. As we have often said, the legislature is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest. If the law "presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied." *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 78–79; *Miller* v. *Wilson,* 236 U. S. 373, 384; *Semler* v. *Dental Examiners,* 294 U. S. 608, 610, 611; *West Coast Hotel Co.* v. *Parrish,* 300 U. S. 379, 400.

There remains the question whether, apart from definition and classification, the procedure authorized by the statute adequately safeguards the fundamental rights embraced in the conception of due process. In this relation it is important to note that appellant has challenged the proceeding *in limine* by seeking to prevent the probate judge from entertaining it. To support such a challenge, the statute in its procedural aspect must be found to be invalid on its face and not by reason of some particular application inconsistent with due process. In that light the argument on this branch of the case also fails.

As we have seen, the facts must first be submitted to the county attorney who must be satisfied that good cause exists. He then draws a petition which must be "executed by a person having knowledge of the facts." The probate judge must set the matter for hearing and for examination of the person proceeded against. Provision is made for his representation by counsel and for compelling the production of witnesses in his behalf. The court must appoint two licensed doctors of medicine to assist in the

examination. The argument that these doctors may not be sufficiently expert in this type of cases merely invites conjecture. There is no reason to doubt that qualified medical men are usually available. Laws as to proceedings where persons are alleged to be insane are made applicable. Appellant says that the patient cannot be released on bail. The State contests this, insisting that he may be so released pending hearing or on appeal, pointing to Mason's Minnesota Statutes, 1938 Supplement, § 8992–178. Appellant contends that if the court finds the patient to be within the statute, he must be committed "for the rest of his life to an asylum for the dangerously insane." Mason's Minn. Stat., 1938 Supp., § 8992–176. The State also contests this conclusion, maintaining that the commitment is without term and subject to the right of the patient, or any one interested in him, to petition the committing court for release at any time. Mason's Minn. Stat., 1938 Supp., § 8992–143; Laws of 1935, Chap. 72, § 143; as amended by Laws of 1939, Chap. 270, § 8. The statute gives a right of appeal from the finding of the probate judge upon compliance with certain specified provisions of the Minnesota laws. Appellant contends that this excludes other provisions of laws relating to appeals in insanity cases. Again, appellant's position is contested by the State upon the ground that there is no express limitation or exclusion in the language of the statute and that other provisions governing appellate procedure apply. These various procedural questions, and others suggested by appellant, do not appear to have been passed upon by the state court.

We fully recognize the danger of a deprivation of due process in proceedings dealing with persons charged with insanity or, as here, with a psychopathic personality as defined in the statute, and the special importance of maintaining the basic interests of liberty in a class of

cases where the law though "fair on its face and impartial in appearance" may be open to serious abuses in administration and courts may be imposed upon if the substantial rights of the persons charged are not adequately safeguarded at every stage of the proceedings. But we have no occasion to consider such abuses here, for none have occurred. The applicable statutes are not patently defective in any vital respect and we should not assume, in advance of a decision by the state court, that they should be construed so as to deprive appellant of the due process to which he is entitled under the Federal Constitution. *Plymouth Coal Co.* v. *Pennsylvania,* 232 U. S. 531, 546; *Utah Power & Light Co.* v. *Pfost,* 286 U. S. 165, 186, 187; *Stephenson* v. *Binford, supra.* On the contrary, we must assume that the Minnesota courts will protect appellant in every constitutional right he possesses. His procedural objections are premature.

The judgment is

*Affirmed.*