**In re Paul LaVerne BROWN.**

**No. C7–87–1489.**

Court of Appeals of Minnesota.

Nov. 10, 1987.

William P. Volkmar, Rochester, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Raymond F. Schmitz, Olmsted Co. Atty., Debra A. Jacobson, Asst. Co. Atty., Rochester, for respondent.

Heard, considered and decided by POPOVICH, C.J., and RANDALL and STONE,* JJ.

## OPINION

BRUCE C. STONE, Acting Judge.

Paul LaVerne Brown appeals from a judgment for commitment finding him mentally ill and dangerous and a psychopathic personality. We affirm.

## FACTS

Paul LaVerne Brown has a lengthy history of incarceration and institution. As a juvenile, he was placed at the Iowa Training School for Boys. Brown's institution and incarceration history as an adult may be summarized as follows:

October 1973: Convicted of assault with intent to commit great bodily harm-jail sentence.

March 1976: Arrested for assault with intent to commit robbery. Sentenced to reformatory for five years. Referred twice to Iowa Security Medical Facility for psychiatric evaluation and treatment. Transferred to penitentiary. Released May 1980.

February 1981: Arrested for assault while participating in a felony. Sentenced to reformatory. Discharged from parole in January 1985.

January 1985: Arrested for sexual abuse in the second degree. Jail sentence for assault with intent to commit sexual abuse.

May 1986: Arrested for assault. Received 36–Month prison sentence for criminal sexual conduct in the fourth degree.

The 1976, 1981, 1985 and 1986 incidents involved allegations of and/or convictions for sexually inappropriate behavior. In 1976, there was evidence that Brown had requested his victim for sexual favors; in 1981, Brown had attacked a college coed on her way to school, had demanded sexual favors, and had touched her breasts; the 1985 incident involved an allegation of rape; and in 1986 Brown had assaulted a woman, "wrestled with" her, and touched her breast.

As part of the presentence investigation ordered after his 1986 conviction, Brown was evaluated by the Intensive Treatment Program for Sexual Aggressives (ITPSA) at the Minnesota Security Hospital at St. Peter, Minnesota. In progress notes, a staff psychiatrist for ITPSA diagnosed Brown as having an organic personality syndrome with psychotic and phobic symptoms, an anti-social personality disorder with an organic mental component, a convulsive disorder, and a dependence upon alcohol and tobacco. The psychiatrist concluded that Brown was dangerous and commitable as mentally ill.

A pre-petition screening report recommended that Brown be involuntarily committed to the Minnesota State Hospital in St. Peter as mentally ill, mentally ill and dangerous, and a psychopathic personality. Subsequently, a petition for judicial commitment was commenced by the Olmsted County Attorney's Office. The court appointed as an examiner a licensed consulting psychologist, who, after interviewing Brown, concluded that he was mentally ill and dangerous and a psychopathic personality.

A second examiner, one of Brown's choosing, was thereafter requested and appointed. The examiner, a psychiatrist at the Mayo Clinic, concluded that Brown was not mentally ill, mentally ill and dangerous, or a psychopathic personality as defined by the Minnesota statutes.

On March 4 and 6, 1987, a commitment hearing was held at which the two examiners, another doctor and a social worker testified as expert witnesses. Their testimony varied: one doctor concluded that Brown was mentally ill, but not dangerous and not a psychopathic personality; another believed Brown was neither mentally ill nor a psychopathic personality; the third concluded that Brown was mentally ill and dangerous and a psychopathic personality; and the social worker supported commit-

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

ment of Brown as mentally ill and dangerous and a psychopathic personality.

Following the hearing, the court resolved the difference in the conclusions of the experts and found that Brown has minimal control of his aggressive impulses; that he suffers from organic brain syndrome; that he has epilepsy, and exhibits a flat affect with periods of lability, over-reaction, cognitive deficiency and memory problems; that he suffers from an anti-social or mixed disorder; that he is mentally ill because he has a substantial psychiatric disorder; that, because of his mental illness, he presents a clear danger to the safety of others, and is therefore mentally ill and dangerous; that he exhibits emotional instability and impulsive behavior; that he lacks customary standards of good judgment, and fails to appreciate the consequences of his acts; that he is not responsible for his conduct with regard to sexual matters and is thereby dangerous to others; that he has failed to regularly take anti-convulsant medication and when depressed and upset resorts to the use of alcohol; and that his distorted thinking and perceptions cause irresponsible behavior sexually toward women and assaults in general.

Based upon these findings, the court concluded that Brown is mentally ill and dangerous, and a psychopathic personality.

### ISSUES

1. Does the record support the court's determination that Brown is mentally ill and dangerous and a psychopathic personality?

2. Is the psychopathic personality statute unconstitutional as applied?

### ANALYSIS

On appeal, our scope of review is limited to determining whether the court's findings are clearly erroneous. *In re Moll*, 347 N.W.2d 67, 69 (Minn.Ct.App.1984).

#### Mental Illness

Minn.Stat. § 253B.02, subd. 13 (1986) defines a "mentally ill person" as follows:

"Mentally ill person" means any person who has an organic disorder of the brain or a substantial psychiatric disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality, or to reason or understand, which (a) is manifested by instances of grossly disturbed behavior or faulty perceptions; and (b) poses a substantial likelihood of physical harm to self or others as demonstrated by (i) a recent attempt or threat to physically harm self or others, or (ii) a failure to provide necessary food, clothing, shelter or medical care, as a result of the impairment. This impairment excludes (a) epilepsy, (b) mental retardation, (c) brief periods of intoxication caused by alcohol or drugs, or (d) dependence upon or addiction to any alcohol or drugs.

The court found that testimony by two doctors and the social worker supported a finding that Brown suffers from organic brain syndrome. There is sufficient evidence in the record to support this finding.

The court also determined that Brown has a substantial psychiatric disorder, and this determination is also supported by the record. When asked specifically whether Brown had a substantial psychiatric disorder of thought, mood, perception, orientation, or memory, one of the doctors and the social worker replied unequivocally "yes."

Brown claims the expert testimony established only that he has an anti-social personality, which is not a "psychiatric" disorder, as defined by the statute. However, one doctor testified that Brown exhibited some psychotic symptoms of the paranoid type, and another doctor agreed, and testified that Brown's perception was distorted, and that he exhibited schizophrenic-like behavior. The social worker described Brown's affect as labile. The sum of this testimony, in conjunction with the testimony that Brown has a "substantial psychiatric disorder of thought, mood, perception, orientation, or memory," is sufficient to support the trial court's finding that Brown suffers from a substantial psychiatric disorder.

The record also supports the trial court's findings regarding each of the additional elements necessary to prove mental illness. Two doctors and the social worker all responded "yes" to direct questioning whether Brown's mental status grossly impaired his judgment, behavior, capacity to recognize reality or to reason or understand, and also testified unequivocally that Brown's impairment was manifested by grossly disturbed behavior or faulty perception. These experts also offered testimony supporting the court's finding that Brown's disorder posed a substantial likelihood of physical harm to himself or others.

### Mentally Ill and Dangerous

Minn.Stat. § 253B.02, subd. 17 defines "mentally ill and dangerous" as follows:

A "person mentally ill and dangerous to the public" is a person (a) who is mentally ill; and (b) who as a result of that mental illness presents a clear danger to the safety of others as demonstrated by the facts that (i) the person has engaged in an overt act causing or attempting to cause serious physical harm to another and (ii) there is a substantial likelihood that the person will engage in acts capable of inflicting serious physical harm on another.

While two of the doctors testified that they did not believe Brown posed a clear danger to the safety of others, the third doctor and the social worker testified that Brown met the requirements of the mentally ill and dangerous statute.

As one commentator suggests:

[T]he 'clear danger' to others must be "demonstrated" by past acts and a prediction of future harm. * * * This suggests a temporal relationship between the past acts and the future dangerousness. * * * Clearly, the more remote the past acts are in time, the less predictive value they have.

E. Janus, *Civil Commitment in Minnesota* 24 (1986). At the time of his commitment hearing, Brown was incarcerated for criminal sexual conduct in the fourth degree. His past acts, therefore, were quite recent. In addition, the experts' prediction of future harm is supported by the numerous instances of Brown's assaults. The trial court is in the best position to evaluate the credibility of evidence and its finding that Brown is mentally ill and dangerous is supported by the record.

### Psychopathic Personality

The statute defining a person as mentally ill and dangerous to the public includes within its definition a person committed as a psychopathic personality, as defined in Minn.Stat. § 526.09 (1986). That statute defines "psychopathic personality" as follows:

The term "psychopathic personality" * * * means the existence in any person of such conditions of emotional instability, or impulsiveness of behavior, or lack of customary standards of good judgment, or failure to appreciate the consequences of his acts, or a combination of any such conditions, as to render such person irresponsible for his conduct with respect to sexual matters and thereby dangerous to other persons.

The court found that Brown met the requirements of this definition. While Brown argues that all of the experts testified that he has been able to exhibit some degree of control over his sexual proclivities, one doctor testified specifically that Brown is "irresponsible with regards to sexual matters," explaining that he does not reflect on his behavior or on his impulses, has not taken responsible directions with his medications, is possibly "operating under an increased lack of control," has distorted thinking, misperceptions, about sex and about women, which lead him to act irresponsibly, and is "pushed by" anger and impulses, ignoring responsible types of behavior. This testimony supports the trial court's finding that Brown is a psychopathic personality. As this court stated in *Matter of Martenies*, 350 N.W.2d 470 (Minn.Ct. App.1984): "When evidence as to the existence of a psychopathic personality is in conflict, the question is one of fact to be determined by the trial court upon all the evidence." *Id.* at 472.

Brown argues that application of the psychopathic personality statute to every per-

son who is found guilty of sexual misconduct would be an unconstitutional application of the statute.

Here, the trial court did not find that Brown was a psychopathic personality simply because he was guilty of sexual misconduct; rather, the court applied each of the elements of the psychopathic personality statute, which includes the requirement that the individual fails to appreciate the consequences of his acts, so as to render him irresponsible for his conduct with respect to sexual matters. Not every individual who is guilty of sexual misconduct would meet these standards.

As this court stated in *Martenies:* "[O]ne who challenges the constitutionality of a statute must overcome every presumption in favor of its constitutionality." *Martenies*, 350 N.W.2d at 473. The *Martenies* court noted that both the Minnesota Supreme Court and the United States Supreme Court have upheld the constitutionality of our psychopathic personality statute. *See, State ex rel. Pearson v. Probate Court*, 205 Minn. 545, 287 N.W. 297 (1939), *aff'd*, 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744 (1940). The United States Supreme Court in *Pearson* stated that the statute is "not patently defective in any vital respect * * *." *Id.* at 277, 60 S.Ct. at 527.

 Here, as noted above, Brown was found to be irresponsible for his conduct with respect to sexual matters, emotionally unstable, and impulsive. He also lacks customary standards and good judgment, and fails to appreciate the consequences of his acts. The statute is not unconstitutional as applied.

## DECISION

The record supports Brown's commitment as mentally ill and dangerous and a psychopathic personality. No inappropriate application of the psychopathic personality statute, Minn.Stat. § 526.09, has been demonstrated.

Affirmed.