**In the Matter of Robert Archie KUNSHIER.**

No. CX–94–1201.

Court of Appeals of Minnesota.

Sept. 27, 1994.

John E. Grzybek, St. Paul, for appellant.

James C. Backstrom, Dakota County Atty., Patricia M. Buss, Asst. County Atty., Hastings, for respondent.

Considered and decided by KALITOWSKI, P.J., and PARKER and DAVIES, JJ.

## OPINION

DAVIES, Judge.

Robert Archie Kunshier appeals from a judgment for indefinite commitment as a psychopathic personality, arguing that (1) the district court failed to limit the statute as required by supreme court decisions, and (2) the county violated the terms of the plea agreement by failing to release appellant after he had served his criminal sentence. We affirm as to the plea bargain issue, but reverse and remand for failure to apply judicial limitations on the statute.

## FACTS

Robert Kunshier is a 37-year-old male, committed indefinitely to the Minnesota Security Hospital at St. Peter as a psychopathic personality. Kunshier's criminal record is extensive. Since 1975, he has spent less than 18 months outside secure facilities.

As a juvenile, he was placed on probation for committing assault, burglary, and for making obscene phone calls. Then, in December 1979, Kunshier kidnapped a young woman and for six hours raped her repeated-

ly. Two days later, he kidnapped another woman and forced her to perform oral sex. Kunshier pleaded guilty to and was sentenced for kidnapping.

One month after his release in 1986, Kunshier was arrested after attempting to kidnap a woman and her baby at knife-point. Kunshier admits this attempt was sexually motivated.

He was sent to the security hospital for sexual aggressiveness treatment, but escaped after 28 days. He stole a car, led police on a high speed chase, and eventually evaded authorities. He then burglarized a home in St. Cloud, raped the female homeowner, and stole her car. Kunshier was apprehended in South Dakota and was sentenced to the correctional facility at Stillwater.

While imprisoned, Kunshier was refused admission to sex offender treatment because he refused to admit that he was chemically dependent. Kunshier later entered the Lino Lakes Transitional Sex Offenders Program (TSOP) and, after his transfer to the security hospital, enrolled in its newly formed sex offender treatment program.

Shortly before his scheduled release from the Lino Lakes correctional facility, Dakota County petitioned for Kunshier's commitment as a psychopathic personality. At the initial commitment hearing in March 1993, the court heard expert testimony from Drs. Roger Sweet, Richard Friberg, James Gilbertson, and Rodger Kollmorgen. Drs. Sweet, Gilbertson, and Kollmorgen also testified at the July 28, 1993, review hearing. Dr. Michael Farnsworth was the only medical expert to testify at the second review hearing on November 17, 1993.

Dr. Farnsworth did not view Kunshier as having an utter lack of control over his sexual impulses, but rather characterized Kunshier as "opportunistic." He was also reluctant to predict whether Kunshier was dangerous. He stated that, even with the best predictor criteria, "you're actually better off flipping a coin." He was noncommittal when asked if Kunshier was a psychopathic personality:

I don't know because there is no literature on psychopathic personality. It is not a diagnosis. I can't answer any questions regarding the statistical analysis or the research on psychopathic personality; there is none. There is no diagnosis other than the *legal diagnosis* of psychopathic personality. Is it consistent with someone who has a history in antisocial personality? Yes.

(Emphasis added.)

Dr. Farnsworth expressed hope that intensive treatment would be effective in teaching new ways for the sex offender to cope with stress in life. Ultimately, he concluded that

these [sex] acts are an act of volition and not of mental illness. Whether a person decides to make the choice not to do the offense again really resides in them and there is nothing that we can really do to change that.

Drs. Sweet and Gilbertson testified that Kunshier met the statutory definition of psychopathic personality. Dr. Sweet concluded that Kunshier is a

calculating person whose level of emotional stability stays within normal levels until he is either threatened or until the impulse to rape becomes all intrusive.

Even though the criminal conduct was at times premeditated, Dr. Sweet believed that Kunshier's behavior was usually "impulse driven past any point of rational control or concern regarding negative impact upon victims or the risk of incarceration." He also noted that Kunshier had never had a serious relationship with a woman and that his sexual gratification was tied to "violence, predation, and domination."

Dr. Gilbertson construed Kunshier's MMPI scores from 1976 to 1993 as showing a "continuing pattern of antisocial characteristics, raw impulsivity, and poor impulse control." While Dr. Gilbertson "applauded" Kunshier's recognition of his problem and his investment in therapy, he noted that these changes were relatively late and "shallowly rooted in an antisocial and sexual predator

career that has spanned at least 27 years." Dr. Gilbertson concluded that Kunshier was "as classic an embodiment of [a] psychopathic personality" as he had ever encountered.

Dr. Kollmorgen was the court-appointed examiner, at the request of Kunshier's attorney. Kollmorgen found Kunshier to be open, honest, forthright, and "well-rehearsed * * * as one would expect from substantial exposure to treatment programs." His report notes that Kunshier is not "mentally ill in the usual sense of the word," but that Kunshier more than satisfies the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (3d ed. rev. 1987) criteria for an antisocial personality; he stated that the Cleckley criteria presents "virtually a word portrait of Mr. Kunshier, as he has been seen clinically over the years."[1]

Dr. Kollmorgen reviewed each of the *statutory* criteria for psychopathic personality. Although unsure of the statutory meaning of emotional instability, he stated that Kunshier's past behavior certainly demonstrates a

failure to appreciate or adhere to the customary societal standards of good judgment, or failure to appreciate (or, in the alternative, to care about) the consequences of his acts.

Regarding the issue of impulsivity, Dr. Kollmorgen noted that Kunshier has with "unerring consistency" demonstrated "impulsivity, the do-now-think-later behaviors" on a conceptual, clinical basis. Yet Dr. Kollmorgen stated that Kunshier's

most heinous behavior was *not* impulsive. There was a chain of events, beginning

with days-long, embellished sexual fantasies, careful planning of time, place, and circumstances, gathering of necessary instrumentality (e.g., tape for binding hands and procurement of an air pistol), and a well-planned execution of the crime.

That Kunshier's behavior was not impulsive in this regard led Dr. Kollmorgen to conclude that

there may be some hope in that a chain of dysfunctional thoughts and behavior may be interdicted prior to the actual execution of the crime.

He noted that Kunshier has made some positive behavioral changes: since his transfer into TSOP, he has been a model prisoner, and,

[i]n the ways that he is able to demonstrate, he has attempted to turn a positive corner. Whether this will hold over time is unknown.

On this basis, Dr. Kollmorgen recommended that Kunshier be released, "but with the most stringent of safeguards and the most intensive oversight possible."

Dr. Friberg's medical report also reflected Kunshier's motivation for and claim of newly found insight. Dr. Friberg, however, focused on Kunshier's MMPI score that was

strongly suggestive of ongoing, marked tendencies toward denial, rationalization, and similar traits that cast doubt on Kunshier's assertion that he does not have deviant fantasies and ongoing impulses towards aggressive, inappropriate sexual behavior.

---

**1.** *See* Hervey Cleckley, *The Mask of Sanity* 338–64 (5th ed. 1988). The Cleckley criteria offer a diagnostic profile of a clinical psychopath:

1. Superficial charm and good "intelligence."
2. Absence of delusions and other signs of irrational thinking.
3. Absence of "nervousness" or psychoneurotic manifestations (i.e., low social anxiety).
4. Unreliability.
5. Untruthfulness and insincerity.
6. Lack of remorse or shame.
7. Inadequately motivated antisocial behavior.
8. Poor judgment and failure to learn by experience.
9. Pathologic egocentricity and incapacity for love.
10. General poverty in major affective [emotional] reactions.
11. Specific loss of insight.
12. Unresponsiveness in general interpersonal relations.
13. Fantastic and uninviting behavior with drink and sometimes without.
14. Suicide rarely carried out.
15. Sex life impersonal, trivial, and poorly integrated.
16. Failure to follow any life plan.

The district court committed Kunshier. The court's findings summarize the expert testimony and (reciting the language of the psychopathic personality statute) conclude that Kunshier

> exhibits such conditions of emotional instability, impulsiveness of behavior, lack of customary standards of good judgment, and failure to appreciate the consequences of his personal acts so as to render him irresponsible for personal conduct with respect to sexual matters and, thereby, dangerous to others.

Kunshier appeals.

## ISSUES

I. Is it enough that substantial expert testimony establishes that appellant meets the *statutory* definition of a psychopathic personality, or does a committing court err by failing to evaluate the record in light of the limitations put on the statute by the federal and state supreme courts?

II. Does the district court's indefinite commitment of appellant as a psychopathic personality violate the terms of his plea agreement by failing to release him after he had served his criminal sentence?

## ANALYSIS

Responding to a constitutional challenge of vagueness, the Minnesota Supreme Court long ago narrowed the statutory definition of psychopathic personality[2] to three elements: (1) habitual misconduct in sexual matters; (2) an utter lack of power to control sexual impulses; and (3) probability that the lack of control will result in harm to others. *State ex rel. Pearson v. Probate Court,* 205 Minn. 545, 555, 287 N.W. 297, 302 (1939), *aff'd,* 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744 (1940). The *Pearson* court cautioned against an over-

broad interpretation of the statute, warning that the statute does not operate on "every person guilty of sexual misconduct nor even to persons having strong sexual propensities." *Id.*

■ To affirm a commitment, evidence of each of the three *Pearson* elements must be clear and convincing. *In re Blodgett,* 510 N.W.2d 910, 915 (Minn.1994), *pet. for cert. filed* (June 9, 1994); *see also* Minn.Stat. § 526.10, subd. 1 (1992) (evidentiary standards for mentally ill and dangerous apply to those committed as psychopathic personalities); *Addington v. Texas,* 441 U.S. 418, 433, 99 S.Ct. 1804, 1813, 60 L.Ed.2d 323 (1979) (clear and convincing standard of proof applies to all civil commitment cases).

■ On appeal, this court applies a clearly erroneous standard of review and must determine whether the district court's findings of fact are supported by the record as a whole. *In re Joelson,* 385 N.W.2d 810, 811 (Minn.1986). Where the evidence conflicts as to the existence of a psychopathic personality, the court must resolve this question of fact on the basis of all the evidence. *In re Martenies,* 350 N.W.2d 470, 472 (Minn. App.1984) (citing *Dittrich v. Brown County,* 215 Minn. 234, 9 N.W.2d 510 (1943)), *pet. for rev. denied* (Minn. Sept. 12, 1984).

### I.

Kunshier argues that the record lacks sufficient evidence to support his commitment as a psychopathic personality. More specifically, Kunshier contends that the district court failed to apply the limits on the reach of the statutory language established by the supreme court in *Pearson.*

Recent supreme court opinions have reiterated that the statute passes constitutional muster only as limited by the three criteria

---

**2.** The statute defines a psychopathic personality as

> the existence in any person of such conditions of emotional instability, or impulsiveness of behavior, or lack of customary standards of good judgment, or failure to appreciate the

consequences of personal acts, or a combination of any such conditions, as to render such person irresponsible for personal conduct with respect to sexual matters and thereby dangerous to other persons.

Minn.Stat. § 526.09 (1992).

established under *Pearson*. *See In re Linehan*, 518 N.W.2d 609, 610 (Minn.1994) ("[W]e [recently] determined that we should follow the *Pearson* definition.") (citing *Blodgett*, 510 N.W.2d 910, 915 (Minn.1994)); *see also* C. Peter Erlinder, *Minnesota's Gulag: Involuntary Treatment for the "Politically Ill"*, 19 Wm. Mitchell L.Rev. 99, 118 (1993) (without the narrowed construction, the "language on the face of the statute was too 'uncertain and vague' ") (citing *Pearson*, 205 Minn. at 547, 287 N.W. at 298).

The proper application of the *Pearson* standard has proved difficult, in part, because of the need to mesh the psychiatric evaluation with the legal requirements. Either the expert psychiatric witnesses or the committing courts (or the legislature) must construct a bridge to translate the psychological diagnosis into language pertinent to the psychopathic personality statute as narrowed by *Pearson*.

On appeal, Dakota County argues that the court properly committed Kunshier even though the court's order did not use the *Pearson* language. For support, the county relies on a case predating *Blodgett* and *Linehan*, *In re Brown*, 414 N.W.2d 800, 804 (Minn.App.1987). *Blodgett* and *Linehan* deprive *Brown* of its precedential value.[3]

The supreme court's *Blodgett* opinion upheld the constitutionality of the psychopathic personality statute and, most importantly, served as a reminder to lower courts that the commitment must be based on the *Pearson* standard. *Blodgett*, 510 N.W.2d at 916–17, 918. *But see id.* at 920 & n. 6 (Wahl, J., dissenting) ("It is troubling that since the Minnesota statute went into effect in 1939, it has been arbitrarily and inconsistently enforced despite the limiting construction in *Pearson*.").

█ Here, the record reflects testimony supporting Kunshier's emotional instability,

impulsivity, lack of good judgment, and failure to appreciate the consequences of his acts. But, lacking the guidance of *Linehan* and *Blodgett*, the district court failed to apply the limiting language of *Pearson*.

Remand is therefore necessary to establish a record showing that the *Pearson* elements have been applied.

> It is not enough, however, for the [district] court to use the [*Pearson* ] language in a conclusory fashion when the expert testimony upon which it relies has been given in terms of the statutory definition.

*Linehan*, 518 N.W.2d at 614. The district court simply recited verbatim the statutory language in committing Kunshier as a psychopathic personality and the transcript reflects medical expert discussion primarily of the statutory criteria.

On remand, the district court may, if necessary, complete the record to determine whether the facts support Kunshier's commitment as a psychopathic personality in light of the *Pearson* elements. Kunshier's criminal history establishes habitual misconduct in sexual matters. The district court's focus must be on whether there is clear and convincing evidence of the second and third *Pearson* elements (utter lack of power to control sexual impulses and probability that the lack of control will result in harm to others).

## II.

█ Kunshier argues that the county violated the terms of his plea agreement by not releasing him after he had served his sentence. Kunshier contends that by pleading guilty he waived important constitutional rights and that commitment now would violate his plea agreement, rendering his self-conviction a form of state-sponsored deceit.

Minnesota case law has consistently rejected Kunshier's argument. *See Blodgett*, 510

---

3. It should also be noted that Brown was committed as both mentally ill and dangerous (MID) *and* as a psychopathic personality. *Brown* thus is distinguishable in that the psychopathic personality commitment was perhaps somewhat incidental to the decision. We find it of interest

that the *Blodgett* majority suggested, as dicta, that the psychopathic personality statute, as construed in *Pearson*, should either be considered a subset of mentally ill and dangerous or recognized as an additional category. *Blodgett*, 510 N.W.2d at 914.

N.W.2d at 918 (legislature may choose either the civil or the criminal system, or both, for dealing with sexual predators); *Fritz v. State,* 284 N.W.2d 377, 386 (Minn.1979); *Lausche v. Commissioner of Public Welfare,* 302 Minn. 65, 71, 225 N.W.2d 366, 369 (1974), *cert. denied,* 420 U.S. 993, 95 S.Ct. 1430, 43 L.Ed.2d 674 (1975); *In re Martenies,* 350 N.W.2d 470, 472–73 (Minn.App.1984), *pet. for rev. denied* (Minn. Sept. 12, 1984).

In *Martenies,* this court noted that

[c]ommitment proceedings under Minn. Stat. § 526.09 are not criminal in nature. Confinement under that statute is for treatment, not for punishment.

350 N.W.2d at 473 (citation omitted). We note that if not civil, commitment runs aground on the bar of double jeopardy.

The district court did not violate the terms of Kunshier's plea by invoking the civil commitment statute.

## DECISION

The district court erred by committing as a psychopathic personality solely on the basis of evidence meeting the statutory criteria. Commitment requires clear and convincing evidence supporting, as well, the criteria established by *State ex rel. Pearson v. Probate Court,* 205 Minn. 545, 555, 287 N.W. 297, 302 (1939), *aff'd,* 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744 (1940).

The district court did not violate the terms of a sex offender's plea bargain by invoking the civil commitment process after completion of the criminal sentence.

**Affirmed in part, reversed in part, and remanded.**