767 So.2d 1249 (2000)
STATE of Florida, Appellant/Cross-Appellee,
v.
Charles BREWER, Appellee/Cross-Appellant.
No. 5D99-3545.
District Court of Appeal of Florida, Fifth District.
September 15, 2000.
Robert A. Butterworth, Attorney General, Tallahassee, and Richard L. Polin, Assistant Attorney General, Miami, for Appellant/Cross-Appellee.
James B. Gibson, Public Defender, and Nancy Ryan, Assistant Public Defender, Daytona Beach, for Appellee/Cross-Appellant.
PER CURIAM.
AFFIRMED.
SAWAYA and PLEUS, JJ., concur.
HARRIS, J., concurs and concurs specially, with opinion.
HARRIS, J., concurring and concurring specially:
I concur with the majority's affirmance. If the State wishes to prolong the incarceration *1250 of those who have served their sentences in order to prevent them from committing future crimes, at least it should follow the numbers in doing so.[1] And although I agree that responding to the constitutional issue raised herein is not essential since we are affirming on other grounds, in the event we are wrong and because the constitutionality of the Jimmy Ryce Act is before us in other cases, a discussion of the issue seems warranted.
Unlike Don Quixote, I realize that I am "tilting at windmills." The fact that all other courts[2] (but not all other judges) which have considered this issue have upheld the constitutionality of their Jimmy Ryce-type statutes convinces me of the improbability of my quest.[3]
The Constitution of the State of Florida grants everyone two basic but highly important protections in the context of criminal law. First, no one may be twice punished for the same offense. This, of course, is the double jeopardy protection granted by Section 9 of our constitution. Second, no one may be punished at all for a crime for which he or she has not been convicted by a unanimous jury. This is the right to trial by jury guaranteed by sections 16 and 22. And there is another right, so basic and logical that it is not even mentioned in our constitution, and that is the right not to be convicted of nor punished for a crime which has not occurred. These rights have not always existed and, even today, do not exist everywhere.
Horrendous cases involving sexual assaults by those recently released from prison highlights the problem of recidivism in general and recidivism as it relates to sexual offences in particular. Legislatures around the country, including Florida's Legislature believe, in good faith, that they have found a loophole in the constitution which permits them to prolong the criminal sentences of those in prison who have committed particular sex offenses and whose sentences are about to expire in order to deny them the opportunity to commit additional offenses in the future. This loophole is called "remedial treatment." It appears that extending the sentences of prior sex offenders under the theory of civil commitment in order to "treat" the defendant is an idea whose time has come. And this, says Victor Hugo, is more powerful than an invading army.[4]
Even so, I agree with Cervantes that the quest itself, however hopeless, is worth the effort.
My quest is not to defend the sexual predators' right to continue their assaults on innocent victims after release from prison; it is to defend a greater interest, the rule of constitutional law.[5] Admittedly *1251 this quest is made more difficult because of the United States Supreme Court's decision in Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), which upheld the constitutionality of a Kansas statute, very similar to Florida's, permitting the continued confinement of those convicted of a sex offense after their criminal sentence has run if the court determines that such confinement is necessary for the protection of society. Any additional protection for individual rights in Florida, therefore, must be based on our constitution.
Without a doubt, a state may constitutionally isolate and confine those persons among us who are a danger to society so long as such confinement comports with constitutional law.[6] Such confinement, depending on the circumstances, may be criminal or civil. The constitutional issues in this case, of course, depend on whether the continued confinement under the Jimmy Ryce Act of one serving time after having previously committed a sex offense is considered punitive or therapeutic. It is conceded by all that such confinement may not constitutionally be a second punishment for an offense previously punished. And it is not disputed that the categorization of a particular proceeding as civil (non-punitive) or criminal (punitive) is determined by statutory construction and that the label placed on the proceeding by the legislature is not controlling. Allen v. Illinois, 478 U.S. 364, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986).
If a mother with four sick children, each of whom displays the same symptoms, gives castor oil only to the one misbehaving does it not appear that the mother's dispensing of this foul-tasting medicine may be more punitive than therapeutic? One criterion which identifies this proceeding as punitive (although admittedly not dispositive) is that it applies only to those who are in confinement and who have been previously convicted of a violent sexual offense. This also apparently worried Justice Thomas in Hendricks in which he strained to find that a criminal conviction is not a requirement of the Kansas act. He points out that under the Kansas statute even one absolved of criminal responsibility may nevertheless be subject to confinement if his continued freedom poses a danger to the public health and safety. That is unquestionably the proper interpretation of the Kansas statute because that is how the Unites States Supreme Court interpreted it. That is not a proper interpretation of Florida's statute.
Although our statute does provide (as did the Kansas act) that it also applies to those found not guilty by reason of insanity, this provision, under Florida law, is illusory. The legislature has acknowledged that this act is concerned with that "small but extremely dangerous number of sexually violent predators ... who do not have a mental disease or defect." Section 394.910, Florida Statutes. These offenders will not meet Florida's standard for *1252 insanity[7] because they are well aware of the consequences of their acts and know them to be wrong. It does not matter under Florida law how irresistible their impulses might be. If a truly insane person does commit a sexual offense and is acquitted because of his mental condition, he is confined in a mental hospital, not under the Jimmy Ryce Act, but rather under Chapter 916 and, unlike the provision of the Jimmy Ryce Act, he is statutorily entitled to immediate treatment addressing his problem.
An acquittal on the merits, regardless of the evidence presented at trial, will not justify proceeding under the Florida act. If the purpose of the act is intended to be the protection of society from those who suffer "from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care and treatment" [section 394.912(10)(b)], why not? If the State Attorney is convinced that the victim and the state's experts are telling the truth, why should he or she be deterred from protecting society merely because a jury has found to the contrary? If the act is civil and non-punitive and not subject to double jeopardy concerns, why should not this person who has evidenced (at least to the victim) a likelihood that he is a danger to society be referred to the multidisciplinary committee for appropriate evaluation and, if found necessary, a civil jury trial?
Further, suppose an individual confesses to the police that he has abused twenty young children but refuses to reveal the victims' names. Unless the police can determine the names of the victims in order to establish a corpus delicti, no prosecution of the individual will be possible. Thus, even though the State is aware of one who is likely to engage in acts of sexual violence if not restrained, it can do nothing under the present act. The same can be said of one who has not yet committed a sex crime but who confesses to a friend that his urges are becoming unbearable and he knows that he will abuse a child in the near future. No Jimmy Ryce commitment for him. Is this not giving castor oil only to the misbehaving child? Although the statute's application to all similar situations may not be essential to its classification as therapeutic, this disparate treatment is yet another indication of punishment. As the number of these indicia mount, the punitive nature of the present provision becomes inescapable and one is left with the conviction that the Jimmy Ryce Act is not a proceeding designed solely to protect the public from those who are a risk to commit sexual offenses in the future, but rather a method of extending indefinitely the confinement of those who have already done so.
Justice Thomas insists that the Kansas act does not affix culpability for prior criminal conduct but instead such conduct is merely evidence of a mental abnormality or future dangerousness. Regardless of how the Kansas statute is interpreted, the Florida statute makes a prior criminal offense more than mere evidence; it is an element of proof. Indeed, it is a condition precedent to bringing the proceedings. The petition must allege "that the person is a sexually violent predator." Section 394.914, Florida Statutes. And a "sexually violent predator" is statutorily defined as one who has been convicted of a sexually violent offense[8] and who suffers from a mental abnormality or personality disorder that makes the person likely to engage in future sexual violence. Section 394.912(10), Florida Statutes. One must *1253 plead elements and not the evidence on which he intends to prove the existence of such elements. Additionally, Justice Thomas asserts that no criminal intent need be shown in order to be committed under the act. But criminal intent must have been shown at the time of committing the predicate sexual offense and the commission of that offense must be shown.
Another aspect of Florida's act, apparently in common with the Kansas act, which indicates that it is a punitive rather than a therapeutic procedure is that it delays necessary treatment until the defendant is ready for discharge from prison or, in the case of one committed because he was found not guilty by reason of insanity, from a mental health facility operated under the mandate of Chapter 916, Florida Statutes. Since one admitted to such facility upon being found not guilty of a crime because of insanity will not be released until it is determined that he is no longer a danger to himself or others, what is the function of the Jimmy Ryce Act in that situation?[9]
Although punishment is the primary purpose of sentencing, rehabilitation is also a goal. To delay the process by which treatment is provided to one whom the State believes is in need of specialized treatment before he can be returned to society until shortly before he is scheduled to be released from incarceration so that continued confinement will be necessary in order to receive treatment seems clearly to be punishment. If retribution is not the reason, why is the prisoner not evaluated and, if found appropriate, transferred to a proper hospital setting and enrolled in a treatment program immediately upon his conviction so that he may well be ready for release back into the community, no longer a threat to the public, as soon as he has "paid his debt to society?" To respond that treatment must be added to a defendant's sentence so that he will receive his full measure of punishment, rather than be a part of his sentence, is tantamount to admitting that the new indefinite confinement procedure is punishment.
There are four penological goals involved in criminal sentencing: retribution, deterrence, incapacitation, and rehabilitation. Justice Thomas in Hendricks discussed retribution and deterrence and determined that the Kansas act was not intended for retribution and could not, in any event, serve as a deterrent because the fact that such defendants cannot control their behavior means that they will not be deterred by the threat of confinement. He did not discuss the penal goals of incapacitation and rehabilitation.
Although incapacitation is most often listed as a separate goal of sentencing, it is also, by its nature, a form of deterrence. It will certainly deter the individual defendant, so long as he is incapacitated, from committing other criminal acts. In fact, it is the incapacitation element of sentencing which embodies the forward-looking aim of future crime reduction or prevention. The Jimmy Ryce Act is designed to meet civilly the incapacitation and rehabilitation functions of criminal sentencing without providing the constitutional protections which go hand-in-hand with the criminal remedy.
Another indication that the procedure is punitive is that the statute does not permit a less restrictive alternative to total confinement. See In re Young, 122 Wash.2d 1, 857 P.2d 989, 1012 (1993) ("Not all sex predators present the same level of danger, nor do they require identical treatment conditions."). In Florida, the statute treats every sexual predator the same.
The State's position can be stated thusly:
"Dr. Jones, as a member of the multidisciplinary committee, you examined the defendant Doe upon his scheduled release from prison and recommended indefinite *1254 civil commitment. Is that right?"
"It is."
"What was the basis for your recommendation?"
"I found the defendant to have a mental abnormality or personality disorder which makes it likely that he will engage in future acts of sexual violence if not restrained."
"What role did the fact that the defendant was incarcerated and had previously committed an act of sexual violence play in your recommendation?"
"It played no role except as evidence that defendant was dangerous, which supported my diagnosis."
"Doctor, if defendant had not been incarcerated but had presented himself at your office and answered your questions the same way and had substantially the same history, what would you have determined?"
"I would have found that defendant had a mental abnormality or personality disorder which would make it likely that he would engage in future acts of sexual violence if not restrained."
"Would you have recommended that the State's Attorney proceed against him under the Jimmy Ryce Act?"
"Of course not. The Act wouldn't apply."
"Then isn't the defendant being again punished for having been incarcerated for a sexual offense?"
"Absolutely not. His incarceration and previous conviction merely qualifies him, admittedly it is the only way that he can qualify, for this heightened scrutiny."
"Doctor, why do you believe the defendant was sentenced to prison for his earlier sex offense?"
"Both to satisfy society's desire for retribution and to protect society from him during his period of confinement."
"And the purpose of his continued civil confinement is for treatment?"
"Well, effective treatment for his condition is problematic. But we will try. In any event, he will be warehoused until he is no longer a danger to society."
"Why is any effort at treatment delayed until the time the defendant is scheduled for release from incarceration?"
"To make sure the defendant is properly punished for his prior crime."
"And this delay is not additional punishment?"
"It's all in the eye of the beholder. The defendant sees it as additional punishment for a past crime; we see it as protection for the public against a likely future crime. And a majority of the United States Supreme Court agrees with us."
"Doctor, what do you mean by `likely'?"
"Less than certain but more than possible."
"If one is 51% `likely' to commit a future crime, would that qualify him for civil commitment?"
"If the statute works properly, it will."
"That means that you are willing to confine indefinitely one who has served his sentence and one for which there is a high possibility, a 49% possibility, that he can be returned to the community and never commit a subsequent offense."
"What's your question?"
"It doesn't bother you that one can be committed on a showing that he is only 51% likely to commit a future crime?"
"There must be clear and convincing proof that the person is at least 51% likely to commit another sex crime."
"Is the medical profession now able to predict an individual's future behavior with such precision?"
"You seem skeptical. In any event, our new prediction instruments can best be described as screening tools classifying individuals into classes presenting with identified sets of characteristics. They cannot therefore be depended upon to predict the behavior with any certainty *1255 of any individual. They instead match a class of people with a probability of engaging in certain behaviors. This actual prediction model is similar to those used to predict heart disease, certain types of cancer, and college success."
"In other words, Doctor, the Jimmy Ryce Act permits the involuntary commitment of those who meet a certain profile?"
"Yes, but it is a medical profile and not the controversial legal profile."
"But the challenge to the legal profile is not that it lacks statistical probability it is based on the same type analysis used for the medical profileit is that we are concerned with protecting the rights of those innocent persons who might fall within the profile. Has one waived the right not to be indefinitely "locked up" to prevent a crime which may never occur because he fits a profile and because he has once been convicted of a sex offense? You do agree that one might well be confined under the Jimmy Ryce Act because he meets the profile even though he might never commit a future crime?"
"Certainly that's possible when you base decisions on statistical odds."
"Doctor, do all sexual predators present the same level of danger so that total confinement is the only answer?"
"Of course not. The age and physical condition of some make them less of a risk. There are other factors that may affect relative danger. It is possible that some could be safely released back to their home on community control with careful monitoring through electronic ankle bracelets and out-patient treatment."
"Then why is secure confinement required for all?"
"Because that's what the statute says."
"Don't you believe that if we are only concerned with preventing one who has shown that he is dangerous to society by having committed a sex offense from getting out of prison and doing it again that we should make his prison sentence extend until he is no longer a danger to society? In other words, why doesn't the State treat continued confinement for society's protection as merely a part of defendant's prison sentence and recognize it as punishment?"
"I have two answers. First, if it is considered punishment, it can only apply to those who subsequently commit a sex offense and could not affect those presently in prison. Second, I don't make the law or determine its validity. I merely predict the future."
It is not that I don't understand the State's position; I simply disagree with it. I am concerned with the State's getting its foot in the door in substituting "treatment" for constitutional protections. As stated by Justice Stevens in his dissent in Allen v. Illinois:
[N]othing would prevent the State from creating an entire corpus of "dangerous person" statutes to shadow its criminal code. Indeterminate commitment would derive from proven violation of criminal statutes, combined with findings of mental disorders and "criminal propensities" and constitutional protections for criminal defendants would be simply inapplicable. The goal would be "treatment"; the result would be evisceration of criminal law and its accompanying protections.
478 U.S. at 379, 106 S.Ct. 2988.
For example, if this statute is constitutional, what will prevent the legislature from determining that recidivism is a serious problem in Florida and that defendants continue to commit crimes because of mental abnormalities or anti-social personality disorders which will not, under the Baker Act, subject the recidivist to the long-term involuntary commitment necessary to cure his mental abnormality or alter his personality in order to prevent him from committing more, and perhaps more serious, crimes in the future. Hence, the legislature might find that the protection *1256 of the public mandates indefinite involuntary confinement in order to provide treatment. The procedure, the legislature might determine, is to subject all persons about to be discharged from incarceration to an evaluation to determine if future criminality might be likely. If the jury determines that there is a 51% chance that the defendant will again commit a burglary or some other such crime, he must remain in a hospital indefinitely. Draconian perhaps, but it might well solve a major portion of our criminal problems in Florida.
Even so, I would hold the present procedure for extending the incarceration for those who have committed a previous sexual offense and who have served the sentence imposed for that offense is punitive and is therefore unconstitutional under Florida's double jeopardy provision and, because the act was passed after Brewer's offense, also violates our ex post facto provision. Keeping sexual predators behind bars so they cannot commit additional acts is a popular position. It is a "feel good" position. But we as judges are not in the "feel good" business and there are times when we must throw our bodies against popular positions.
Constitutional truths are blurred by the extraordinarily evil acts committed by people such as Brewer and constitutional principles are sacrificed to assure that these people are unable to repeat such acts in the future. Do you feel how slippery the slope has become?
With apologies to all the victims of perverts such as Brewer, I urge that the legislature, even acting with the best of intentions, went too far when it extended the prison term of those who have completed their legal sentences because they previously committed a violent sex offense and fit a profile. I do so not for Brewer's sake but for yours.
NOTES
[1] The trial court dismissed the petition for involuntary commitment under the Jimmy Ryce Act because the State improperly continued the incarceration of Brewer beyond his prison term before commencing the proceedings.
[2] Most state courts which have considered the issue merely rely on Hendricks without an analysis of their own law. Washington and Minnesota have upheld the constitutionality of their acts but only because their law permitted less than total confinement.
[3] I confess to some concern that all other courts are marching to a different drummer.
[4] Victor Hugo, Histoire d'un Crime, (1852): "An invasion of armies can be resisted, but not an idea whose time has come."
[5] The issue here is not whether sexual psychopaths should be removed from society. The question is whether we should do so because of what they have done rather than for what they might do. There is no problem with the state punishing sexual offenders by "locking them up and throwing away the key." But offenders should be punished for a crime for which they have been convicted by a jury and not "civilly confined" to protect society from a crime which they might ultimately commit. If the legislature wishes to hold violent sexual offenders in prison until they are determined to be safe to return to society, it could do so by making the sentence for such offenses "x number of years to life" with x being the minimum years of incarceration required for the particular offense together with such remaining portion of the defendant's life until it is determined that it is safe to return him to society. This review procedure is now being employed in the case of the Manson defendants seeking parole.
[6] Consider the Minnesota sexual predator statute upheld by the United States Supreme Court in State of Minnesota ex rel. Pearson v. Probate Court of Ramsey County, 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744 (1940), which applies to all individuals who pose a similar risk but only to those individuals for whom the risk is individually established without the assistance of a profile. The Minnesota act does not require a previous conviction or current incarceration. And it will not permit the commission of a single sexual act to trigger the application of a profile to justify indefinite civil commitment. It does require that the individual for whom civil commitment is sought be shown to have committed as sufficient number of sexual acts so that their habitual conduct, and not some profile, evidences their dangerousness. Further, the Minnesota act incorporates the relevant portions of their insanity laws which presumably would require immediate treatment for those restrained and that the restraint imposed be consistent with the danger posed by the individual.
[7] It is not clear from Hendricks whether uncontrollable impulse constitutes an insanity defense in Kansas. Justice Thomas does allude to uncontrollable impulses.
[8] "Convicted of a sexually violent offense" is itself defined as either being convicted of committing a sexually violent offense or having been found not guilty by reason of insanity. Section 394.912(2), Florida Statutes. The second alternative, however, as previously discussed, has no practical significance.
[9] If one ultimately released from Jimmy Ryce incarceration commits another sex violation, should he be returned to the hospital as not being "cured" or sent to prison because he is a criminal who could have, but did not, resist his sick impulses?